ROORBACH and another *against* LORD and others.

The title to personal property, on the death of the owner, vests in his executor or administrator : and the heirs entitled to distribution, have no right of possession, until after distribution made.

*Middlesex,*
July,
1822.

Roorbach
*v.*
Lord.

This was an action of book debt against *Samuel P. Lord* and *Hall* and *Robbins*.  Judgment was rendered against *Hall* and *Robbins*, by default.  *Lord* pleaded *nil debet ;* and on this issue, the cause was tried at *Haddam, October* term, 1821, before *Chapman,* J.

The demand of the plaintiffs consisted of charges for supplies furnished, between the 26th of *February* and the 6th of *June,* 1817, for the ship *Greyhound,* then lying in the port of *New-York,* at the request of Capt. *West,* the acting master. This vessel was built and owned, by *Samuel P. Lord* sen., now deceased ; and was, at the time of his death, in 1812, his property.  She was registered in the name of *Richard Lord,* brother of *Samuel P. Lord,* the defendant, for the sake of convenience only.  After the death of *Samuel P. Lord* sen., and before the plaintiff's demand accrued, the defendant and his two brothers, *Richard* and *George,* bought in from all the other heirs, all the right and interest they had in the estate of their deceased father ; but there was no evidence, that that estate had ever been distributed among the heirs, or in any other manner settled.  The defendant and his brothers took possession of the ship, and sent her on a foreign voyage ; and after her return, in the fall of 1816, and before the accruing of the plaintiff's demand, *Richard,* with the consent of *George,* sold to *Hall* and *Robbins,* two thirds of the ship, without the consent of *Samuel P.,* the defendant ; who gave notice to *Richard,* that he would thereafter have no concern in her.

The judge instructed the jury, that if the defendant, *S. P. Lord,* had no other interest in the ship than what he derived from being heir to the estate of his father, and his conveyance from the other heirs ; and was not in possession of her, at the time the plaintiffs' demand accrued ; and had done no act in relation to her, from which his assent to the appointment of the master, or to the furnishing of the supplies, could be inferred ; the verdict must be in his favour : But if he was in possession of the ship, at the accruing of the plaintiff's demand ; or if he, in any way, assented to the furnishing of the supplies ; the plaintiffs would be entitled to a verdict.

*Middlesex,*
*July,*
*1822.*

Roorbach
*v.*
Lord.

Under this direction, the jury returned a verdict for the defendant ; and the plaintiffs moved for a new trial, on the ground of a misdirection.

*Staples* and *Barnes*, in support of the motion, contended, 1. That the defendant was the owner of this vessel, on the death of his father, against all the world, except the special qualified legal property of the executor, or administrator, when appointed. *Toll. Exrs.* 101. *Griswold* v. *Penniman* & al. 2 *Conn. Rep.* 564.

2. That the defendant might well be considered as standing on different ground from that of a *mere heir.* The legal interest in this vessel was not in *S. P. Lord* sen., at the time of his death, but was in *Richard Lord.* He was trustee for all interested. The defendant bought in his title, as well as the interest of the other heirs.

3. That the defendant took possession, with the right of property ; and was virtually in possession, while the ship was in the hands of *Hall* and *Robbins,* and lay in *New-York.*

4. That upon these facts, the defendant was liable for the supplies furnished for the use of the ship. He would have been equally liable for repairs. *Williams* v. *Kelly* and *Sanger,* 2 *Conn. Rep.* 218. n.

*Sherman*, contra, contended, 1. That in order to subject a person for supplies furnished, by a stranger, for a ship, he must have a *strictly legal title.*

2. That the title to personal property, on the death of the owner, vests in the executor or administrator, and not in the persons entitled to distribution. In *Griswold* v. *Penniman* & al. the court did not decide, that the legal title vested before distribution ; but that the right of the wife, such as it was, having accrued during coverture, belonged to the husband. The mere fact that a person is entitled to a distributive share, gives him no legal title.

3. That the jury, under the direction of the court, have found, that the defendant was not in possession, as owner, at the time the supplies were furnished.

4. That the jury have also found, that the defendant did not act in the appointment of the master, or in relation to the supplies, from which his assent could be inferred.

Hosmer, Ch. J. The action of the plaintiff is founded on this principle ; that the defendant was joint owner with *Hall* and *Robbins* of the ship *Greyhound.* It appears, that the ship was formerly the property of *Samuel P. Lord,* deceased ; that *Hall* and *Robbins* derived their right from two of his heirs ; that the above owner died intestate ; and that no administration has been had of his estate. Under the charge of the court to the jury, it must be presumed, they found the following facts : that the defendant, one of the heirs of *S. P. Lord,* deceased, had no other interest in the ship than what he derived from being an heir to his father ; that he was not in possession of the ship at the time the plaintiffs' demand accrued ; and that he has done no act from which his assent to the appointment of the master of the ship, or to the furnishing of the supplies, may be inferred. The question presented is merely this ; whether, by virtue of his right of inheritance, the defendant is joint owner with *Hall* and *Robbins* of the ship in question ; so that by their appointment of a master, who procured the requisite supplies for a voyage, the defendant, without possession of the ship or assent, is bound to contribute to the expenditure. The court below negatived this question, and, I think, with entire correctness.

At common law, the real property of an intestate, descends to his legal heirs ; but the personal estate does not descend. Before the statute of *Westminster* 2. *cap.* 19. the ordinary had the absolute disposal of the personal estate of intestates ; and this power was first abridged, by the statute of 13 *Edw.* 1. *cap.* 19. requiring him to pay the debts of the deceased so far as his goods extended. By successive statutes, the ordinary was compelled to grant administration of the estate of intestates ; and eventually, by the statute of 22 and 23 *Car.* 2. *cap.* 2. to take bond of the administrator, in order to enforce the payment of debts, and the distribution of the property. But, to the present time, all the chattels of a testator, belong to his executors, for the payment of debts and legacies, and of an intestate to his administrator ; and his heirs, vested only with *a right,* cannot possess or enjoy the property, except through the medium of a distribution. The heir, so far from having a right to possess the personal estate of the deceased, if he intermeddle with it, is an officious intruder ; and becomes an executor in his own wrong, liable to all the trouble of an executorship, without any of the profits or advantages. The lawful executor may bring trover, before the will is proved ;

*Middlesex,*
July,
1822.

Roorbach
*v.*
Lord.

but such an action cannot be maintained by the heir. I have barely glanced at a subject, which, from its triteness and familiarity, requires neither discussion, nor the citation of authorities. In result, it may be observed, that the heir, at common law, in respect of chattels, has a right of inheritance, which exists in legal contemplation only, and no right of possession, until the fruit of it is matured in the manner by law prescribed.

The case of *Griswold* v. *Penniman,* 2 *Conn. Rep.* 564. has been cited as having established a different doctrine ; but this decision is misconceived. The enquiry in the case, was not in relation to the *nature* of the right, vested in an heir, to the estate of his ancestor, much less whether he could legally take possession of personal estate anterior to distribution. But it had respect exclusively to the right of the husband, to the distributive share of his wife. Like a legacy to the wife, or a bond taken to her during coverture, it was adjudged, by the court, that her right as heir to personalty vested absolutely and exclusively in the husband. But, it was never contemplated, that the invested right, gave him a legal authorthority to enter into possession of the chattels of the deceased, until after a lawful distribution.

In the late case of *Schuyler &* al. v. *Hoyle &* ux. 5 *Johns. Ch. Rep.* 196. where the wife succeeded, during the life-time of her husband, to a distributive share, over which he exercised no authority or dominion, and which remained in the hands of the administrator, at his death ; Chancellor *Kent* decided, that she was entitled to such share, in preference to the representatives of her husband. " While the share," said he, " remained in the possession of the administrator, it retained the character of assets, and the legal title and possession were in him, *qua* administrator."

The charge, in my opinion, was correct ; and I would not advise a new trial.

The other Judges were of the same opinion.

New trial not to be granted.